UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Quera Pruitt, on behalf of herself and
all others similarly situated,                                  Civil File No. _____

        Plaintiff,

v.

Karsten Anderson, in his individual and
official capacity; Dr. Beth Borgen,
in her individual and official capacity;
Red Wing Public Schools, ISD #256;
John and Jane Does, in their individual
and official capacity;

        Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

## I.  INTRODUCTION

Teenagers do not always understand the profound impact that bigotry and bullying has on its victims.  But adults should.  Especially when the adults are administrators and teachers within public schools wherein they are acting as *parens patriae.*  The Plaintiff, through her counsel, brings this lawsuit to hold the Defendant School accountable for its deliberate indifference to the harm she

suffered during, and following, the "Wigger Days" held at Red Wing High School in 2008 and 2009.[1]

The Defendants' deliberate indifference to the harm Plaintiff experienced as a result of "Wigger Days" was not only immoral, but as the Tenth Circuit made plain, it was illegal:

> It does not take an educational psychologist to conclude that being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, being shamed and humiliated on the basis of one's race, and having school authorities ignore or reject one's complaints would adversely affect a Black child's ability to obtain the same benefit from schooling as her white counterparts.

*Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty, Okla.*, 334 F.3d 928, 932 (10th Cir. 2003).

## II.    THE PARTIES

1.    Plaintiff, Quera Pruitt, is an adult Black female who at all relevant times was a student at Red Wing High School.

---

[1]  "Wigger, sometimes spelled Whigger, is a pejorative slang term for a white person who emulates the mannerisms, language and fashions associated with African-American culture. . .  The term is a portmanteau of either *wannabe or white* and *nigger*. . . It is also often used in a racist manner, not only belittling the person perceived as acting black, but also demeaning black people and culture by proxy."  http://en.wikipedia.org/wiki/Wigger.  Last visited July 27, 2011.

2.      Defendant Karsten Anderson is the Superintendent of ISD #256.  Defendant

Superintendent Anderson is responsible for the supervision of all schools,

including the development and implementation of the policies, customs,

practices, and procedures of ISD #256.   Defendant Superintendent

Anderson is also responsible for the hiring, training, retention,

supervision, discipline, counseling, and control of the employees of ISD

#256.  He is sued in his individual and official capacity.

3.      Defendant Dr. Beth M. Borgen has served as the principal of Red Wing

High School, a school governed by ISD #256, at all times relevant to this

action.  She is responsible for the hiring, training, retention, supervision,

discipline, counseling, and control of the employees of Red Wing High

School.  She is sued in her individual and official capacity.

4.      Defendant Red Wing Public Schools, ISD #256 ("ISD #256") is a public

school district and a governmental subdivision of the State of Minnesota

located in Red Wing, Minnesota.  Defendant ISD #256 is entrusted with the

responsibility of providing public education to children residing within its

district boundaries, including students of Red Wing High School.  ISD

#256 is the recipient of federal funds.  ISD #256 is responsible for the

training of ISD #256's employees, including school administrators and faculty. ISD #256 is sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes Section 466.02 for the unlawful conduct of the individual defendants above-named.

5.   John and Jane Does are teachers and administrators who were employed by the Red Wing High School during the relevant academic years. These teachers and administrators had a duty to end the discriminatory practices as they observed them. They are being sued in their individual and official capacity.

### III.   JURISDICTION & VENUE

6.   This action is brought under Title VI ("Title VI"), 42 U.S.C. § 2000d; 42 U.S.C. § 1983; the Minnesota Human Rights Act; and state common law. This Court therefore has jurisdiction over this action under 28 U.S.C. §§ 1343(a)(3), 1331, and 1367. Venue is proper in this district under 28 U.S.C. § 1391 because the acts and omissions giving rise to this action occurred in this district, and all Defendants reside in this district.

## FACTUAL ALLEGATIONS

7.   The Plaintiff, Quera Pruitt, was enrolled as a student at the Red Wing High School for the academic school years of 2008-2009 (junior year) and 2009-2010 (senior year).

8.   The student population at Red Wing High School was predominantly White during the 2008-2009 and 2009-2010 academic years.

9.   The student council at Red Wing High School planned "Dress Up Days" to take place at the school during Homecoming Week of Fall 2009.

10.   The student council designated September 30, 2009, as "Tropical Day."

11.   Approximately 60 or 70 upperclassmen boys and girls, however, designated September 30, 2009, as "Wigger Day" or "Wangsta Day."

12.   Wigger is a pejorative slang term for a white person who emulates the mannerisms, language and fashions associated with African-American culture.

13.   Wigger is a combination of the words White and Nigger.

14.   Wigger, within the Red Wing community, may also mean "Winger Nigger."

15.   Wangsta is also a pejorative slang term for a white person who emulates the mannerisms, language and fashions associated with African-American culture.

16.   Wangsta is a combination of the words White and gangsta.

17.   Wangsta, within the Red Wing community, also means "Winger Gangsta."

18.   The students who participated in Wigger or Wangsta day wore clothes that, from their perspective, mimicked Black culture.  These costumes included oversized sports jerseys, low-slung pants, baseball hats cocked to the side, and "'doo rags" on their heads.  Some of the students displayed gang signs.

19.   Principal Borgen was aware that the Wednesday of Homecoming Week had historically been referred to among the students as "Wednesday Wigger Day."

20.   Indeed, September 30, 2009, was not the first time the students at Red Wing High School held Wigger or Wangsta Day.

21.   School officials acknowledge that "Wednesday Wigger Day" had occurred in at least the "last couple of years" prior to September 30, 2009.

22.   At the time of Wigger Day 2008, school officials were aware of the racist nature of Wigger Day.

23.   At the time of Wigger Day 2009, school officials were aware of the racist nature of Wigger Day.

24.   Defendants were aware that Wigger Days would likely create a racially hostile environment for Ms. Pruitt and those similarly situated.

25.   Ms. Pruitt and her mother complained directly to school officials—including Principal Borgen—that Wigger Day 2009 was racially offensive.

26.   The teachers and staff at Red Wing High School were aware of the racially offensive nature of Wigger Day.

27.   Red Wing High School receives federal funding for its educational programs.

28.   Independent School District Number 256 receives federal funding for its educational programming.

29.   Defendants knew that they had a duty to stop Wigger Day because it created a racially hostile environment for the students.

30.   Prior to intervention by state and federal government officials, including the Minnesota Department of Human Rights and the United States

Department of Education, the Defendants did not take school-wide action to address Wigger Day.

31.   As a result of Defendants' conduct, Plaintiff has suffered severe and extreme emotional distress including depression, loss of sleep, stress, crying, humiliation, anxiety, and shame.

32.   Ms. Pruitt's depression forced her to discontinue her participation in school activities such as track, cheerleading, and student council.

33.   Ms. Pruitt chose to not participate in her school's Dr. Martin Luther King, Jr. Day celebration because she felt the celebration was a farce in light of the school district's failure to prevent or adequately remediate the conduct that took place on Wigger Day.

34.   Ms. Pruitt's depression caused her to consider dropping out of school, and caused her to miss out on her own senior prom.

## CLASS ACTION ALLEGATIONS

35.   Plaintiff brings this action in her individual capacity and on behalf of all students who experienced discrimination as a result of Wigger Day.

36.   Joinder of all members of the putative class is impracticable. The exact number of the Class members is unknown at this time but upon information and belief exceeds 40 persons.

8

37.     There are common questions of law and fact that predominate over any question affecting the Plaintiff or any individual Class member.

38.     Plaintiff will fairly and adequately protect the interest of the Class. Plaintiff has retained counsel who is capable of handling civil rights class actions.

39.     A class action is a superior method for the fair and efficient adjudication of this action.  The identities of the Class members may be obtained from the Defendant's records.

**COUNT I**
**Hostile Environment**
**against**
**Kartsen Anderson and**
**Independent School District No. 256**
**Violation of Title VI, 42 U.S.C. § 2000d**

40.     Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

41.     Title VI and its implementing regulations prohibit discrimination in a federally-funded school based on a student's race.

42.     Ms. Pruitt and other similarly situated were subjected to harassment and discrimination on the basis of race.

9

43.     The harassment and discrimination were sufficiently severe and pervasive to alter the conditions of their education and create a hostile environment.

44.     Independent School District #256, through Principal Borgen, had actual knowledge of the harassment and discrimination and failed to take adequate steps to address the conduct.

45.     As a result of Defendants' conduct, customs, policies, and practices, Plaintiff was unjustly and discriminatorily deprived of equal educational opportunities and benefits.

## COUNT II
**Race Discrimination**
**Against All Defendants**
**42 U.S.C. § 1983**

46.     Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

47.     Plaintiff had a constitutional and statutory right to have equal access to public education, without regard for her race.

48.     Defendants acted with intent as expressed by their deliberate indifference, to violations of those constitutional and statutory rights.

49.     The school district has a duty under state law to ensure that students' behavior does not create a racially hostile environment.

50.     Defendants' conduct caused Ms. Pruitt to suffer injuries, damages, and harm.

## COUNT III
**Against All Defendants**
**Violation of the Minnesota Human Rights Act, § 363A.13** *et seq.*

51.     Plaintiff restates the allegations contained in the previous paragraphs as if fully incorporated herein.

52.     Defendants had a duty to provide Plaintiff with an educational atmosphere free of racial discrimination.

53.     Defendants failed to take adequate steps to provide Ms. Pruitt with an educational atmosphere free of racial discrimination.

54.     Defendants' conduct caused Ms. Pruitt to suffer injuries, damages, and harm.

## COUNT V
**Against All Defendants**
**Aiding and Abetting**
**Violation of the Minnesota Human Rights Act, § 363A.01 *et seq.***

55.     Plaintiff restates the allegations contained in the previous paragraphs as if fully incorporated herein.

56.     Defendants knew or should have known that other persons' conduct violated Ms. Pruitt's rights under the MHRA and gave constructive substantial assistance or encouragement to those persons' conduct.

57.     Defendants' failure to end the discriminatory practices school-wide caused Ms. Pruitt to suffer injuries, damages, and harm.

## COUNT VI
**Against All Defendants**
**Negligence**

58.     Plaintiff restates the allegations contained in the previous paragraphs as if fully incorporated herein.

59.     Defendants breached their duty to provide Ms. Pruitt with an educational atmosphere free from racial discrimination.

60.     Defendants' breach caused Ms. Pruitt to suffer injuries, damages, and harm.

61.     The injuries, damages, and harm Ms. Pruitt suffered were foreseeable to Defendants.

## JURY DEMAND

62.     Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.      Enter judgment in Plaintiff's favor on her claims against Defendants in an amount exceeding $75,000, the exact amount to be proven at trial;

2.      Award Plaintiff damages to compensate her for the injuries she suffered as a result of Defendants' unlawful conduct;

3.      Award Plaintiff punitive damages, the exact amount to be proven at trial;

4.      Award Plaintiff reasonable expenses incurred in this litigation, including attorney and expert fees;

5.      Enter a declaratory judgment that the conduct set forth above is unlawful;

6.      Enjoin Defendants from allowing Wigger or Wangsta Day to take

place on school property;

7.      Grant any other relief the Court deems just and equitable.


Dated:  July 29, 2011                              _s/Joshua R. Williams_____

Joshua R. Williams (#389118)

jwilliams@jrwilliamslaw.com

2701 University Avenue SE, Suite 209

Minneapolis, Minnesota 55414

(612) 486-5540

(612) 605-1944 Facsimile


A. L. Brown (# 331909)

2515 White Bear Avenue,

Suite A-8103

Maplewood, MN 55109-5159

Telephone (651) 252-1214

E-Mail: A.L.Brown@Comcast.net


**ATTORNEYS FOR PLAINTIFF**