UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Quera Pruitt, on behalf of herself and all others similarly situated, | Civil File No. 11-CV-2143 (DSD/JJK) |
| Plaintiff, | |
| v. | |
| Dr. Beth Borgen, in her individual capacity; and Red Wing Public Schools, ISD #256; | |
| Defendants. | |

---

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

### I.   INTRODUCTION

Teenagers do not always understand the profound impact that bigotry and bullying has on its victims.  But adults should.  Especially when the adults are administrators and teachers within public schools wherein they are acting as *parens patriae.*  The Plaintiff, through her counsel, brings this lawsuit to hold the Defendant School District accountable for its deliberate indifference to the harm

she suffered during, and following, the "Wigger Days" held at Red Wing High School in 2008 and 2009.[1]

The Defendants' deliberate indifference to the harm Plaintiff experienced as a result of "Wigger Days" was not only immoral, but as the Tenth Circuit made plain, it was illegal:

> It does not take an educational psychologist to conclude that being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, being shamed and humiliated on the basis of one's race, and having school authorities ignore or reject one's complaints would adversely affect a Black child's ability to obtain the same benefit from schooling as her white counterparts.

*Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty, Okla.*, 334 F.3d 928, 932 (10th Cir. 2003).

## II.   THE PARTIES

1. Plaintiff Quera Pruitt is an adult Black female who at all relevant times was a student at Red Wing High School.

---

[1] "Wigger, sometimes spelled Whigger, is a pejorative slang term for a white person who emulates the mannerisms, language and fashions associated with African-American culture. . .  The term is a portmanteau of either *wannabe or white* and *nigger*. . . It is also often used in a racist manner, not only belittling the person perceived as acting black, but also demeaning black people and culture by proxy." http://en.wikipedia.org/wiki/Wigger.  Last visited July 27, 2011.

2

2. Defendant Dr. Beth M. Borgen has served as the principal of Red Wing High School, a school governed by ISD #256, at all times relevant to this action. She is responsible for the hiring, training, retention, supervision, discipline, counseling, and control of the employees of Red Wing High School. Borgen acted under color of state law at all times relevant to this action. She is sued in her individual capacity.

3. Defendant Red Wing Public Schools, ISD #256 ("ISD #256") is a public school district and a governmental subdivision of the State of Minnesota located in Red Wing, Minnesota. Defendant ISD #256 is entrusted with the responsibility of providing public education to children residing within its district boundaries, including students of Red Wing High School. ISD #256 is the recipient of federal funds. ISD #256 is responsible for the training of ISD #256's employees, including school administrators and faculty. ISD #256 is sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minnesota Statutes Section 466.02 for the unlawful conduct of its employees.

### III.  JURISDICTION & VENUE

4.  This action is brought under Title VI ("Title VI"), 42 U.S.C. § 2000d; 42 U.S.C. § 1983; and the Minnesota Human Rights Act.  This Court therefore has jurisdiction over this action under 28 U.S.C. §§ 1343(a)(3), 1331, and 1367.  Venue is proper in this district under 28 U.S.C. § 1391 because the acts and omissions giving rise to this action occurred in this district, and all Defendants reside in this district.

### FACTUAL ALLEGATIONS

5.  Plaintiff Quera Pruitt was enrolled as a student at the Red Wing High School for the academic school years of 2008-2009 (junior year) and 2009-2010 (senior year).

6.  The student population at Red Wing High School was predominantly White during the 2008-2009 and 2009-2010 academic years.

7.  The student council at Red Wing High School planned "Dress Up Days" to take place at the school during Homecoming Week of Fall 2009.

8.  The student council designated September 30, 2009, as "Tropical Day."

9.  Approximately 60 or 70 upperclassmen boys and girls, however, designated September 30, 2009, as "Wigger Day" or "Wangsta Day."

10. Wigger is a pejorative slang term for a white person who emulates the mannerisms, language and fashions associated with African-American culture.

11. Wigger is a combination of the words White and Nigger.

12. Wigger, within the Red Wing community, may also mean "Winger Nigger."

13. Wangsta is also a pejorative slang term for a white person who emulates the mannerisms, language and fashions associated with African-American culture.

14. Wangsta is a combination of the words White and gangsta.

15. Wangsta, within the Red Wing community, also means "Winger Gangsta."

16. The students who participated in Wigger or Wangsta day wore clothes that, from their perspective, mimicked Black culture.

17. These costumes included oversized sports jerseys, low-slung pants, baseball hats cocked to the side, and "'doo rags" and wigs that, from their perspective, mimicked traditionally Black hairstyles on their heads.

18. Some of the students displayed gang signs.

19. Some of the students wore clothing that, from their perspective, mimicked clothing stereotypically associated with Black gang members.

20. School officials, including Principal Borgen, were aware that the Wednesday of Homecoming Week had historically been referred to among the students as "Wednesday Wigger Day."

21. September 30, 2009, was not the first time the students at Red Wing High School held Wigger or Wangsta Day.

22. School officials, including Principal Borgen, acknowledged that "Wednesday Wigger Day" had occurred in at least the "last couple of years" prior to September 30, 2009.

23. At the time of Wigger Day 2008, school officials were aware, or should have been aware, of the racist nature of Wigger Day.

24. At the time of Wigger Day 2009, school officials were aware, or should have been aware, of the racist nature of Wigger Day.

25. Defendants were aware, or should have been aware, that Wigger Days would likely create a racially hostile environment for Ms. Pruitt and those similarly situated.

26. Ms. Pruitt and her mother complained directly to school officials—including Principal Borgen—that Wigger Day was racially offensive.

27. Red Wing High School receives federal funding for its educational programs.

28. Independent School District Number 256 receives federal funding for its educational programming.

29. Defendants had a duty to stop Wigger Day because it created a racially hostile environment for the students.

30. Prior to intervention by state and federal government officials, including the Minnesota Department of Human Rights and the United States Department of Education, the Defendants did not take school-wide action to (1) address Wigger Day, (2) train employees on how to prevent students from participating in Wigger Days, (3) train employees on how to respond to Wigger Days, (4) act on complaints about Wigger Days, or (5) otherwise take adequate action to prevent Wigger Days and remediate the harm caused by Wigger Days.

31. As a result of Defendants' conduct, Plaintiff has suffered severe and extreme emotional distress including depression, loss of sleep, stress, crying, humiliation, anxiety, and shame.

32. Ms. Pruitt's depression forced her to discontinue her participation in school activities such as track, cheerleading, and student council.

33. Ms. Pruitt chose to not participate in school activities because of the racially hostile environment that resulted from Wigger Days.

34. Ms. Pruitt became depressed because of Wigger Days and the Defendants' failure to protect her from a racially hostile environment and as a result her interest in academics suffered.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action in her individual capacity and on behalf of all students who experienced discrimination as a result of Wigger Day.

36. Joinder of all members of the putative class is impracticable. The exact number of the Class members is unknown at this time but upon information and belief exceeds 40 persons.

37. There are common questions of law and fact that predominate over any question affecting the Plaintiff or any individual Class member.

38. Plaintiff will fairly and adequately protect the interest of the Class. Plaintiff has retained counsel who is capable of handling civil rights class actions.

39. A class action is a superior method for the fair and efficient adjudication of this action. The identities of the Class members may be obtained from the Defendant's records.

## COUNT I
### Hostile Environment
### Independent School District No. 256
### Violation of Title VI, 42 U.S.C. § 2000d

40. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

41. Title VI and its implementing regulations prohibit discrimination in a federally-funded school based on a student's race.

42. Ms. Pruitt and others similarly situated were subjected to harassment and discrimination on the basis of race.

43. The harassment and discrimination were sufficiently severe and pervasive to alter the conditions of their education and create a hostile environment.

44. Independent School District #256 had actual knowledge of the harassment and discrimination and failed to take adequate steps to address the conduct.

45. As a result of Defendants' conduct, customs, policies, and practices, Plaintiff was unjustly and discriminatorily deprived of equal educational opportunities and benefits.

## COUNT II
### Race Discrimination
### All Defendants
### 42 U.S.C. § 1983

46. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

47. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Title VI, 42 U.S.C. § 2000d prohibit discrimination based, in whole or in part, upon a person's race.

48. Defendants, acting under color of state law, denied Plaintiff equal educational opportunities and benefits by subjecting her to harassment and discrimination based on her race in violation of the Equal Protection Clause and Title VI.

49. As a result of Defendants' conduct, customs, policies, and practices, Plaintiff was unjustly and discriminatorily deprived of equal educational opportunities and benefits.

50. Defendants acted with intent as expressed by their deliberate indifference to violations of those constitutional and statutory rights.

51. Defendants had a duty to ensure that students' behavior did not create a racially hostile environment.

52. Defendants breached that duty, as demonstrated by their failure to (1) address Wigger Day, (2) train employees on how to prevent students from participating in Wigger Days, (3) train employees on how to respond to Wigger Days, (4) act on complaints about Wigger Days, or (5) otherwise take adequate action to prevent Wigger Days and remediate the harm caused by Wigger Days.

53. Defendants' conduct caused Ms. Pruitt to suffer injuries, damages, and harm.

## COUNT III
## Red Wing Public Schools, ISD #256
## Violation of the Minnesota Human Rights Act
## Minn. Stat. § 363A.13 *et seq.*

54. Plaintiff restates the allegations contained in the previous paragraphs as if fully incorporated herein.

55. Defendants had a duty to provide Plaintiff with an educational atmosphere free of racial discrimination.

56. Defendants failed to take adequate steps to provide Ms. Pruitt with an educational atmosphere free of racial discrimination.

57. Defendants denied Plaintiff the full utilization, equal educational opportunities, and benefits of an education by subjecting her to harassment and discrimination based on her race.

58. Defendants denied Plaintiff the full utilization, equal educational opportunities, and benefits of an education by failing to remediate the race-based harassment and discrimination.

59. Defendants' conduct caused Ms. Pruitt to suffer injuries, damages, and harm.

60. Ms. Pruitt filed a Charge of Discrimination with the Minnesota Department of Human Rights against ISD #256 on September 14, 2010.

61. Ms. Pruitt alleged in her Charge that ISD #256's conduct in connection with Wigger Day 2009 violated the Minnesota Human Rights Act.

62. The Department found probable cause that ISD #256 violated Ms. Pruitt's rights under the MHRA.

## JURY DEMAND

63. Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFOR**E, Plaintiff respectfully requests that the Court:

1. Enter judgment in Plaintiff's favor on her claims against Defendants in an amount to be determined at trial;

2. Award Plaintiff damages to compensate her for the injuries she suffered as a result of Defendants' unlawful conduct;

3. Award Plaintiff punitive damages with respect to her § 1983 claims, the exact amount to be proven at trial;

4. Grant Plaintiff leave to amend the Complaint to include a claim for punitive damages with respect to her state law claims;

5. Award Plaintiff reasonable expenses incurred in this litigation, including attorney and expert fees;

6. Award Plaintiff all other statutory relief she is entitled to;

7. Enter a declaratory judgment that the conduct set forth above is unlawful;

8. Enjoin Defendants from allowing Wigger or Wangsta Day to take place on school property;

9. Grant any other relief the Court deems just and equitable.

Dated: January 8, 2012

*s/Joshua R. Williams*
Joshua R. Williams (#389118)
jwilliams@jrwilliamslaw.com
2701 University Avenue SE, Suite 209
Minneapolis, Minnesota 55414
(612) 486-5540
(612) 605-1944 Facsimile

A. L. Brown (# 331909)
Capitol City Law Group, LLC
155 South Wabasha Street, Suite 125
Saint Paul, MN 55107
Telephone (651) 252-1214
E-Mail: A.L.Brown@Comcast.net

**ATTORNEYS FOR PLAINTIFF**